**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **GLENDAL FRENCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-cv-3045** |
| | ) | |
| **ROB JEFFREYS, CAMILE** | ) | |
| **LINDSAY, and JOHN EILERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants Rob Jeffries,

Camile Lindsay, and John Eilers ("Defendants") Motion to Dismiss

(d/e 9).  For the following reasons, the Motion (d/e 9) is GRANTED.

**I.    BACKGROUND**

On February 23, 2023, Plaintiff Glendal French ("Plaintiff")

filed a six-Count Complaint against Defendants Rob Jeffreys,[1] in his

capacity as Director of the Illinois Department of Corrections

("IDOC"), Camile Lindsay, in her capacity as Chief of Staff of IDOC,

and John Eilers, in his capacity as Director of Operations of IDOC

---

[1] Defendants note that although Plaintiff identifies Rob "Jeffries," the correct
spelling is Rob "Jeffreys."  The Court adopts the spelling Rob "Jeffreys."

("Defendants").  Counts I, II, and III allege violation by Jeffreys, Lindsay, and Eilers, respectively, of Plaintiff's procedural due process of a property interest, his employment.  Counts IV, V, and VI allege violation by Jeffreys, Lindsay, and Eilers, respectively, of Plaintiff's due process rights of an occupational liberty interest.

On June 12, 2023, Defendants moved to dismiss all Counts for failure to plausibly state a claim for relief upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e 9).  On July 31, 2023, Plaintiff filed his Response (d/e 12).

## II.   LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007).  A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" that puts the defendant on notice of the allegations.  Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)(2)).  The court accepts all well-pleaded facts alleged and draws

all possible inferences in the plaintiff's favor.  Tamayo v.

Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to

demonstrate a claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007).  A plausible claim is one from which the court is

able to draw reasonable inferences that the defendant is liable for

the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 663

(2009).  Additionally, the complaint must raise a reasonable

expectation that discovery will reveal evidence of liability.  Id. at

663; Twombly, 550 U.S. at 545.  A complaint merely reciting a

cause of action or conclusory legal statements without support is

insufficient.  Iqbal, 556 U.S. at 663.

### III.   FACTS

The following facts are taken from Plaintiff French's Complaint

(d/e 1) and are accepted as true at the motion to dismiss stage.

Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir.

2015).

In 1995, Plaintiff joined IDOC as a correctional officer, and

progressively rose through the ranks.  d/e 1, ¶ 6.  In 2018, Plaintiff

was a shift supervisor at the Pontiac Correctional Center ("Pontiac").

Id. at ¶ 7.  Plaintiff was a member of the VR704 bargaining unit, represented for collective bargaining purposes by a labor organization affiliated with the Laborers' Union of North America, which covered his shift supervisor position.  Id. at ¶¶ 7, 8.  Under the terms of the collective bargaining agreement, discipline could be imposed on a covered employee only for just cause.  Id. at ¶ 8.

Between March 2018 and August 2019, Plaintiff was temporarily assigned the duties of the assistant warden of operations at Pontiac.  Id. at ¶ 9.  During this time, Plaintiff alleges he was still covered by the collective bargaining agreement.  Id.  In August 2019, IDOC returned Plaintiff to his shift supervisor position.  Id.

On October 26, 2018, a group of Pontiac correctional officers engaged in a prank, which involved the circulation of a drawing of an inmate performing a lewd act.  Id. at ¶ 10.  A copy of the drawing was sent to French, who immediately transmitted it to Pontiac's acting chief internal affairs officer.  Id. at ¶ 11.  This was the "sole and only transmittal" Plaintiff made of the offensive drawing.  Id. at ¶ 12.  Plaintiff alleges that he did so because he viewed the preparation and dissemination of the drawing as inappropriate and

warranting investigation.  Id. at ¶ 11.  Plaintiff alleges that he believed he had a good faith duty to report serious misconduct to Internal Affairs.  Id.  He was later informed that only the warden of Pontiac could request an internal affairs investigation.  Id.

In June 2019, the Office of Executive Inspector General ("OEIG") began an investigation into the October 26, 2018 incident. Id. at ¶ 13.  On October 23, 2020, the OEIG issued a report of its investigation, finding, among other things, that Plaintiff had engaged in conduct unbecoming a Department supervisor and the misuse of state equipment.  Id. at ¶ 14.  In the fall of 2022, the OEIG publicly released its report.  Id.

In June 2020, Plaintiff was recruited by IDOC to take the position of assistant warden of operations at the Western Illinois Correctional Facility.  Id. at ¶ 15.  On March 5, 2021, Plaintiff had a meeting with Defendant Eilers.  Id. at ¶ 16.  At the meeting, Eilers informed Plaintiff that because of his involvement in the October 26, 2018 incident, Plaintiff was being terminated from his position with IDOC.  Id.  In terminating Plaintiff, neither IDOC nor the Defendants provided Plaintiff with: (1) advance notice that possibly disciplinary action might be taken against him and an opportunity

to respond to that notice before any disciplinary action was taken;

and (2) an opportunity for a hearing after his termination to contest

the disciplinary decision.  Id. at ¶ 17.

In December 2022, several news media outlets published the

OEIG's findings to the public.  Id. at ¶ 18.  The outlets

characterized the OEIG report as a "scathing" revelation of a climate

of hazing and sexual discrimination, creating a hostile work

environment at Pontiac.  Id.  The outlets also reported Plaintiff as

having engaged in conduct unbecoming of an IDOC supervisor's

misuse of state equipment in connection with that "climate."  Id.

Plaintiff alleges that following his termination, he has been unable

to secure meaningful employment.  Id. at ¶ 19.

## IV.   ANALYSIS

The Due Process Clause of the Fourteenth Amendment forbids

a state from depriving any person of "life, liberty, or property,

without due process of law."  U.S. Const. amend. XIV, § 1.  "An

essential component of a procedural due process claim is a

protected property or liberty interest."  Minch v. City of Chi., 486

F.3d 294, 302 (7th Cir.2007).  Counts I, II, and III of Plaintiff's

Complaint allege a violation of his procedural due process rights of

3:23-cv-03045-SEM-KLM   # 13   Filed: 12/18/23   Page 7 of 20

property interest, his employment.  Counts IV, V, and VI allege a

violation of Plaintiff's procedural due process rights of an

occupational liberty interest.  The Court addresses each in turn.

### A. The Court Dismisses Counts I, II, and III Because Plaintiff Fails to Allege a Property Interest.

Counts I, II, and III allege a violation of Plaintiff's property

interest, his employment.  "To demonstrate a procedural due

process violation of a property right, the plaintiff must establish

that there is '(1) a cognizable property interest; (2) a deprivation of

that property interest; and (3) a denial of due process.'"  Khan v.

Bland, 630 F.3d 519, 527 (7th Cir. 2010) (quoting Hudson v. City of

Chi., 374 F.3d 554, 559 (7th Cir. 2004)).  "In the employment

context, a property interest can be created in one of two ways, '1) by

an independent source such as state law securing certain benefits;

or 2) by a clearly implied promise of continued employment.'

Phelan v. City of Chi., 347 F.3d 679, 681 (7th Cir. 2003) (citing

Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir. 1986); see also

Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010).

Plaintiff is unable to state that he has any interest in his

employment.  In his Complaint, Plaintiff states that on October 26,

Page 7 of 20

2018, when the incident occurred, Plaintiff was a shift supervisor at Pontiac and was covered by a collective bargaining agreement.  d/e 1, ¶¶ 7–9.  However, in his later pleading, Plaintiff "acknowledges that at the time of his termination he was an assistant warden and was no longer covered by the collective bargaining agreement which had covered his employment as a shift supervisor."  d/e 12, p. 11. Plaintiff was not covered by the collective bargaining agreement when his employment was terminated on March 5, 2021.

However, the absence of explicit contractual provisions "may not always foreclose the possibility that a [public employee] has a 'property' interest in [continued employment]."  Perry v. Sindermann, 408 U.S. 593, 601 (1972).  "Absent an express agreement, an at will employee may still prove a property interest in his or her employment under the second test if there is a 'clearly implied promise in their continued employment.'"  Phelan, 347 F.3d at 682 (citing Shlay, 802 F.2d at 921)).  In cases regarding at will employees, in order to demonstrate that there is a property interest, a plaintiff must show more than a "unilateral expectation" or an "abstract need or desire" for the employment; he must have some "legitimate claim of entitlement" to it.  Bd. of Regents v. Roth, 408

U.S. 564, 577 (1972); see also Perry, 408 U.S. at 601 ("mutually

explicit understandings that support [a] claim of entitlement" may

give rise to a property interest in employment).

In Plaintiff's pleading, he asserts that Defendants were aware

of the October 26, 2018 incident and Plaintiff's involvement in it

and took no steps to discipline or investigate him.  d/e 12, p. 11.

Instead, Plaintiff was recruited to serve as an assistant warden at

Western in June 2020, nearly 20 months after the incident.  Id.

Plaintiff asserts that this conduct "coupled with [his] 26 years of

successful service implied that the October [26], 2018 incident was

not going to lead to the assessment of any discipline . . . it was an

implied promise of continued employment as an assistant warden."

Id. at pp. 11–12.

The Court finds that Defendants' conduct does not constitute

an implied contract.  First, the Seventh Circuit has found that

factors such as longevity of service, good performance reviews, and

periodic salary increases are insufficient to create a property

interest in continued employment.  Shlay, 802 F.2d at 922; see also

Phelan, 347 F.3d at 682 (the mere length of employment does not

provide a right to continued employment).  Therefore, Plaintiff's

assertions of "26 years of successful service" do not create an expectation of continued employment.  Furthermore, Plaintiff does not allege any affirmative statements made by any Defendant with supervisory and hiring authority that would cause Plaintiff to believe he had a property interest.  See Lee v. Cty. of Cook, 862 F.2d 139, 143 (7th Cir. 1988) (assurances creating a mutually explicit understanding made by a supervisor vested with proper authority to create a property interest).  Moreover, Plaintiff's "unilateral expectation" of continued employment, premised on his belief that he would not be disciplined for the October 26, 2018 incident due to the passage of time, without more, is insufficient to support a due process claim.  See Roth, 408 U.S. at 577.  Therefore, Counts I, II, and III are dismissed.

**B. The Court Dismisses Counts IV, V, and VI Because Plaintiff Fails to Allege an Occupational Liberty Interest.**

Counts IV, V, and VI allege a violation of Plaintiff's interest in occupational liberty.  An occupational liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his "good name, reputation, honor, or integrity" or imposes a "stigma or other

disability on the individual which forecloses other opportunities."

Roth, 408 U.S. at 573; see also Palka, 623 F.3d at 454.  To prevail

on such a claim, a plaintiff must establish that "(1) the defendant

made stigmatizing comments about him; (2) those comments were

publicly disclosed; and (3) he suffered a tangible loss of other

employment opportunities as a result of the public disclosure."

Palka, 623 F.3d at 454.

The stigmatizing comments element requires Plaintiff to show

that a public official made statements containing false assertions of

fact; neither "true but stigmatizing" statements or "statements of

opinion, even stigmatizing ones" satisfy the first element.  Bryant v.

Gardner, 545 F. Supp. 2d 791, 800 (N.D. Ill. 2008) (citing

Strasburger v. Bd. of Educ., Hardin Cty. Comm. Unit Sch. Dist. No.

1, 143 F.3d 351, 356 (7th Cir. 1998)).  Here, statements that

Plaintiff was allegedly involved in the October 26, 2018 incident

calls into question his "good name, reputation, honor, or integrity."

Roth, 408 U.S. at 573.  Defendants argue that Plaintiff "pleads and

admits he engaged in the behavior that creates the basis of his

defamation claim (transmitting the drawing of the lewd act[])."  d/e

9, p. 7.  Indeed, Plaintiff alleges that the OEIG concluded that

Plaintiff, by transmitting the drawing "engaged in conduct unbecoming [of] a Department supervisor and the misuse of state equipment." d/e 1, ¶ 14.  However, Plaintiff also alleges that the sole transmittal of the lewd drawing occurred when he transmitted it to Pontiac's acting chief internal affair officer because he believed it warranted investigation.  Id. at ¶¶ 11, 12.  Taking Plaintiff's allegations as true, as the Court must at this stage, it is plausible that the characterization of Plaintiff's alleged involvement in the October 26, 2018 incident was a false assertion of fact, and therefore constitutes a stigmatizing comment.  However, Plaintiff has not alleged that Defendants made any specific stigmatizing comments.  See Wroblewski v. City of Washburn, 965 F.2d 452, 456 n.2 (7th Cir. 1992) ("To be constitutionally cognizable, however, an official's defamation must consist of specific stigmatizing statements that are made public.").  Rather, Plaintiff alleges that the OEIG published a public report and that "several members of the news media published and broadcasted OEIG's findings to the

public." d/e 1, ¶¶ 14, 18.  Therefore, Plaintiff fails to allege that the

Defendants made stigmatizing comments about him.

The public disclosure element requires that Defendants

disseminated the stigmatizing comments in a way that would reach

potential future employers or the community at large.  Ratliff, 795

F.2d at 627.  Even if Plaintiff alleged that specific stigmatizing

comments were made about him, Plaintiff has not alleged that

Defendants personally disseminated the stigmatizing comments.

Plaintiff claims that Seventh Circuit law makes "clear that except in

constructive dissemination situations, the dissemination must

come from the mouth of a public official, but not necessarily the

Defendants." d/e 12, p. 6.  The Courts finds this to be a

mischaracterization.  In Strasburger, the court stated that a liberty

interest claim "requires the employee to show that a public official

made defamatory statements about him."  143 F.3d at 356.

However, when analyzing the alleged defamatory statements, all

were attributed to statements made by school board members, who

were the named defendants in the case.  Id. at 356–57.

Furthermore, in McMath v. The City of Gary, the plaintiff's

complaint alleged that the "[d[efendants and agents of the

[d]efendants communicated the[] false allegations to members of the public[.]"  976 F.2d 1026, 1031 (7th Cir. 1992).  Again, while the alleged disclosure may have been made by a public official, the alleged disclosure was made by the defendants *who were* public officials.  In both of these cases, dissemination of the stigmatizing comments was made by a defendant who *is* a public official, not *any* public official.  Here, however, Plaintiff alleges that it was the OEIG and subsequent press media that publicly disseminated the information about Plaintiff's alleged involvement in the October 26, 2018 incident.  d/e 1, ¶¶ 14, 18.  While Plaintiff has sufficiently alleged more than the mere likelihood of public disclosure, see Johnson v. Martin, 943 F.2d 15, 16–17 (7th Cir. 1991), Plaintiff has not alleged that any specific statements made by Defendants were publicly disclosed by them.

However, Plaintiff also argues that constructive dissemination occurred.  d/e 12, p. 6.  The constructive dissemination test states that "the disclosure element [is] met even though there ha[s] not been actual transmission of the information because dissemination [is] inevitable."  Dunn v. Schmitz, 70 F.4th 379, 383 (7th Cir. 2023) (citing Dupuy v. Samuels, 397 F.3d 493, 510 (7th Cir. 2006)).  But

see Johnson, 943 F.2d at 17 (holding "potentially stigmatizing

information which remains in a discharged employee's personnel

file and has not been disseminated beyond the proper chain of

command within the police department has not been" disclosed).  In

Dupuy, the Court found that the plaintiffs satisfied the public

dissemination requirement because the Illinois statute required "all

current and prospective employees of a child care facility who have

any possible contact with children in the course of their duties" to

authorize the Department of Childcare and Family Services (DCFS)

to conduct a background check to determine if the person has an

indicated report against him.  225 Ill. Comp. Stat. 10/4.3; 397 F.3d

at 510.  There, the plaintiffs alleged that DCFS procedures deprived

them of their liberty interest to pursue a career in child care.  Id. at

503.  Similarly, in Malhotra v. Univ. of Ill. at Urbana-Champaign,

the court found that the threat of dissemination of plaintiff's

disciplinary record was non-speculative so long as he intended to

apply to graduate school, taking judicial notice of the fact that

graduate universities typically require the disclosure of such

records.  No. 2:21-cv-02220, 2022 WL 3576242, at *4 (C.D. Ill. July

19, 2022).  There, plaintiff alleged that his "academic record will

now reflect that he was dismissed for two semesters" and "this
information will invariably be disclosed by defendants to any
institution [or employer] Plaintiff will apply to."  Id.

Plaintiff has alleged that it is inevitable that his alleged
involvement in the October 26, 2018 incident would be publicly
disclosed because of the OEIG's legal obligation to do so.  Here, the
OEIG was legally required to publicly disclose its report on its
investigation into Plaintiff's alleged involvement into the October 26,
2018 incident.  Illinois statutes state:

> If an Executive Inspector General, upon the conclusion of
> an investigation, determines that reasonable cause exists
> to believe that a violation has occurred, then the Executive
> Inspector General shall issue a summary report of the
> investigation.

5 Ill. Comp. Stat. 430/20-50.

> Within 60 days after receipt of a summary report and
> response from the ultimate jurisdictional authority or
> agency head that resulted in a suspension of at least 3
> days or termination of employment, the Executive Ethics
> Commission shall make available to the public the report

and response or a redacted version of the report and
response.

5 Ill. Comp. Stat. 430/20-52.

Illinois statute also states that there is a duty to cooperate in OEIG

investigations:

> It is the duty of every officer and employee under the
> jurisdiction of the Legislative Inspector General, including
> any inspector general serving in any State agency under
> the jurisdiction of the Legislative Inspector General, to
> cooperate with the Legislative Inspector General and the
> Attorney General in any investigation undertaken
> pursuant to this Act. Failure to cooperate includes, but is
> not limited to, intentional omissions and knowing false
> statements. Failure to cooperate with an investigation of
> the Legislative Inspector General or the Attorney General
> is grounds for disciplinary action, including dismissal.
> Nothing in this Section limits or alters a person's existing
> rights or privileges under State or federal law.

5 Ill. Comp. Stat. 430/25-70.

The Court notes that Plaintiff's Complaint attributes the public

disclosure of stigmatizing statements to the OEIG and press media,

and not Defendants.  However, due to the duty of Defendants to

cooperate in OEIG investigations, the Court finds that it is possible

that Defendants' cooperation and any alleged stigmatizing

statements made by Defendants would be disclosed publicly.

Granted, a report is only made public if the OEIG "determines that

reasonable cause exists to believe that a violation has occurred."  5

ILCS 430/20-50.  As a result, it is not inevitable that any

statements made by cooperating individuals would be publicly

disclosed.  However, here, an OEIG investigative report was publicly

disclosed.    Therefore, Plaintiff satisfies the public disclosure

element by alleging that stigmatizing comments were publicly

disclosed through constructive dissemination.

Further, the tangible loss element requires Plaintiff to allege

that the defamatory statements have made it "virtually impossible

for [the plaintiff] to find new employment" within his occupation, or

where the information has "the effect of blacklisting 'the plaintiff

from comparable jobs.'"  Ratliff, 795 F.2d at 625–26; Townsend v.

Vallas, 256 F.3d 661, 670 (7th Cir. 2001).  In other words, "it is

only the 'alteration of legal status,' such as government deprivation

of a right previously held, 'which, combined with the injury

resulting from the defamation, justifies the invocation of procedural

safeguards.'"  Mann v. Vogel, 707 F.3d 872, 878 (7th Cir. 2103).

This is commonly referred to as the "stigma-plus" test.  Id. at 878;

see also Somerset House, Inc. v. Turnock, 900 F.2d 1012, 1015 (7th

Cir. 1990).  To successfully plead an occupational liberty claim, a

plaintiff must allege he suffered tangible loss of other employment

opportunities that cannot be "unduly speculative." Townsend, 256

F.3d 661, 671 (7th Cir. 2001).  "To demonstrate a loss of

employment opportunities, the plaintiff must allege a 'permanent

exclusion' or 'protracted interruption' from the individual's chosen

field because of the defendant's actions." Bryant v. Gardner, 545 F.

Supp. 2d 791, 802 (N.D. Ill. 2008) (citing Wroblewski v. City of

Washburn, 965 F.2d 452, 456 (7th Cir. 1992)).  Here, Plaintiff

alleges that "following his termination [he, as] a career public

employee with an otherwise good work record, has been unable to

secure meaningful employment."  d/e 1, ¶ 19.  At this stage, this is

sufficient to satisfy the tangible loss element.  Yet, although Plaintiff

satisfies the public disclosure and tangible loss elements, Plaintiff

fails to sufficiently allege the stigmatizing comments element

necessary to establish an occupational liberty claim.  Thus, Counts

IV, V, and VI are dismissed.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss

(d/e 9) is GRANTED.  Counts I, II, III, IV, V, and VI are DISMISSED

WITHOUT PREJUDICE for failure to plausibly state a claim for relief

upon which relief can be granted.  Plaintiff is granted leave to file an

Amended Complaint as to Counts I, II, III, IV, V, and VI.  Any

Amended Complaint shall be filed within 30 days of the entry of this

Order.  The Clerk is DIRECTED to change the case name to identify

Defendant "Rob Jeffries" as "Rob Jeffreys."

**ENTERED:  December 18, 2023.**

**FOR THE COURT:**

/s/ Sue E. Myerscough

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**