IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GLENDAL FRENCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-3045 |
| ) | |
| ROB JEFFREYS, CAMILE ) | |
| LINDSAY, and JOHN EILERS, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants Rob Jeffries, Camile Lindsay, and John Eilers ("Defendants") Motion to Dismiss (d/e 24). Plaintiff Glendal French ("Plaintiff") again fails to demonstrate a cognizable property interest in continued employment, so the Motion (d/e 24) is GRANTED.

**I.     BACKGROUND**

On August 16, 2024, Plaintiff Glendal French ("Plaintiff") filed a three-Count Second Amended Complaint (d/e 23) against Defendants Rob Jeffreys, in his capacity as Director of the Illinois Department of Corrections ("IDOC"), Camile Lindsay, in her capacity as Chief of Staff of IDOC, and John Eilers, in his capacity

as Director of Operations of IDOC ("Defendants"). Counts I, II, and III allege denial by Jeffreys, Lindsay, and Eilers, respectively, of Plaintiff's procedural due process of a property interest, his employment.

On August 30, 2024, Defendants moved to dismiss all Counts for failure to plausibly state a claim for relief upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e 24). On September 13, 2024, Plaintiff filed his Response (d/e 25).

## II.  LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief" that puts the defendant on notice of the allegations. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)(2)). The court accepts all well-pleaded facts alleged and draws all possible inferences in the

plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to demonstrate a claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plausible claim is one from which the court can draw reasonable inferences that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability. Id. at 663; Twombly, 550 U.S. at 545. A complaint merely reciting a cause of action or conclusory legal statements without support is insufficient. Iqbal, 556 U.S. at 663.

### III.   FACTS

The following facts are taken from Plaintiff's Second Amended Complaint (d/e 23) and are accepted as true at the motion to dismiss stage. Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

In 1995, Plaintiff joined IDOC as a correctional officer, and progressively rose through the ranks. d/e 23, ¶ 6. In 2018, Plaintiff was a shift supervisor at the Pontiac Correctional Center

("Pontiac"). Id. at ¶ 7. Plaintiff was a member of the VR704 bargaining unit, represented for collective bargaining purposes by a labor organization affiliated with the Laborers' Union of North America. Id. While Plaintiff held the position of shift supervisor, a collective bargaining agreement covered the terms of his employment. Id. at ¶ 8. Under the terms of the collective bargaining agreement, discipline could be imposed on a covered employee only for just cause. Id.

Plaintiff further asserts that as a shift supervisor, Plaintiff was a merit compensation employee and enjoyed the protections of the Personnel Code, 20 ILCS 415/1 et. al. Id. at ¶ 15. Plaintiff asserts that, because he was a member of the VR704 bargaining unit and was a merit compensation employee, the terms of his employment were governed by the terms of the collective bargaining agreement between the State of Illinois and the Union. Id.

Between March 2018 and August 2019, while holding the shift supervisor position, Plaintiff was temporarily assigned the duties of the assistant warden of operations at Pontiac. Id. at ¶ 9. During this time, he was still covered by the collective bargaining agreement. Id.

While temporarily serving as the assistant warden at Pontiac, Defendant Eilers on several occasions offered Plaintiff the permanent position of assistant warden of operations at Pontiac. Id. at ¶ 10. Defendant Eilers had the authority to discipline and initiate termination actions for employees under his chain of command. Id. at ¶ 5. Plaintiff declined the offer each time and expressed to Defendant Eilers that, if he accepted the offered position, his employment would not be covered by the collective bargaining agreement, and he would lose the accompanying job protection. Id. at ¶ 10.

On October 26, 2018, a group of Pontiac correctional officers engaged in a prank at the expense of a correctional officer, which involved the circulation of a drawing of an inmate performing a lewd act. Id. at ¶ 11. A copy of the drawing was sent to Plaintiff, who immediately transmitted it by email to Lieutenant White-Cotton, Pontiac's acting chief internal affairs officer. Id. at ¶ 12. This was Plaintiff's "sole and only involvement on his part in the incident" involving the offensive drawing ("the October 26, 2018, incident"). Id. at ¶ 13.

Plaintiff alleges that he immediately transmitted the drawing by email to Lieutenant White-Cotton because he viewed the preparation and dissemination of the drawing as improper and warranting investigation. Id. at ¶ 12. Plaintiff believed he had a good faith duty to report serious misconduct to an internal affairs officer. Id. Plaintiff was later informed that only the warden of Pontiac could request an internal affairs investigation. Id.

In June 2019, the Office of Executive Inspector General ("OEIG") began an investigation into the October 26, 2018, incident. Id. at ¶ 18. Upon completing the investigation, OEIG issued a report on it. Id. at ¶ 19. Plaintiff alleges that the report "identified no facts that [his] involvement in the incident was other than as described" above and "identified misconduct relating to the incident by three security supervisors each of whom had significant involvement in that incident." Id. All three of those supervisors were covered by the collective bargaining agreement and disciplined by IDOC following the OEIG investigation. Id. at ¶ 20. None of the three supervisors were terminated or removed from his position. Id.

In July 2019, Plaintiff requested a return to his position as shift supervisor. Id. at ¶ 14. He discussed that request with

Defendant Eilers, Director of Operations at IDOC, and explained that he was not happy as an assistant warden. Id. Defendant Eilers, although disappointed, indicated he understood and would accommodate Plaintiff's request. Id. Plaintiff also alleges that IDOC "looked into" the October 26, 2018, incident "and was aware that Plaintiff's "involvement [in the incident] was limited to" the description above. Id. at ¶ 17.

In May 2020, Defendant Eilers contacted Plaintiff. Id. at ¶ 21. Defendant Eilers informed Plaintiff that there were operational problems at the Western Illinois Correctional Facility ("Western") and asked Plaintiff if he would consider interviewing for the position of assistant warden of operations there. Id. Defendant Eilers informed Plaintiff that, if Plaintiff took the position, Defendant Eilers wanted Plaintiff to move as soon as possible. Id.

Although Plaintiff agreed to the interview, he was concerned about accepting the assistant warden position at Western because: (1) he was only three years away from retirement; (2) he enjoyed his job and job security as a shift supervisor; and (3) he would have to move from his residence in Lexington, Illinois, which would involve his children going into a different school system and him selling his

home and purchasing a new home. Id. at ¶ 22. Several days later, Defendants Eilers, Lindsay, and Jeffreys interviewed Plaintiff for the Western position. Id. at ¶ 23.

Following the interview, Plaintiff was undecided whether he would accept the assistant warden position if it were offered to him. Id. at ¶ 24. Plaintiff's position as a shift supervisor provided him with some job security. Id. He was aware from what others told him as well as what he observed while working at Pontiac that, in the past, "wardens and assistant wardens had been terminated from their jobs for arbitrary reasons unrelated to their conduct or performance without the ability he had as shift supervisor to challenge that action." Id.

Several days following Plaintiff's interview, Defendant Eilers offered Plaintiff the assistant warden position at Western and informed Plaintiff he would have to start the position in five days. Id. at ¶ 25. Plaintiff alleges that IDOC was aware that Plaintiff's involvement in the October 26, 2018, incident "was limited to what is described" above. Id. at ¶ 26.

During discussions with Defendant Eilers, Plaintiff expressed his concern about job security as an assistant warden. Id. at ¶ 27.

In response to Plaintiff's concern, Defendant Eilers told Plaintiff not to worry because IDOC no longer engaged in the "arbitrary" termination practices that concerned Plaintiff. Id. at ¶ 28.

Plaintiff accepted the assistant warden position. Id. at ¶ 29. He would not have accepted the position without Defendant Eilers' assurances of job security in that position. Id.

On March 5, 2021, Plaintiff was directed to a meeting in Springfield, Illinois with Defendant Eilers. Id. at ¶ 30. At the meeting, Defendant Eilers informed Plaintiff that, because of Plaintiff's involvement in the October 26, 2018, incident, Plaintiff was being terminated from his position with IDOC. Id. In terminating Plaintiff, neither IDOC nor Defendants provided Plaintiff with: (1) any advance notice that possible disciplinary action might be taken against him and an opportunity to respond to that notice before any disciplinary action was taken; and (2) an opportunity for a hearing after his termination to contest the disciplinary decision. Id. at ¶ 31. Plaintiff alleges that IDOC terminating him, while retaining the three supervisors also found to have been involved in the October 26, 2018, incident, was "arbitrary." Id. at ¶ 32.

## IV.  ANALYSIS

Defendants argue that, since Defendant Eilers' statement to Plaintiff did not create a mutually explicit understanding of job security, Plaintiff has no cognizable property interest in his employment as an assistant warden and, therefore, is not entitled to due process. d/e 24, pp. 3–5. Plaintiff argues that he has alleged a property interest through the mutually explicit understanding created by Defendant Eilers' representations to him. d/e 25, pp. 3–7.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "An essential component of a procedural due process claim is a protected property or liberty interest." Minch v. City of Chi., 486 F.3d 294, 302 (7th Cir. 2007). Counts I, II, and III of Plaintiff's Second Amended Complaint allege a violation of his procedural due process rights of property interest, his employment.

"To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property

interest; and (3) a denial of due process.'" Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010) (quoting Hudson v. City of Chi., 374 F.3d 554, 559 (7th Cir. 2004)). "In the employment context, a property interest can be created in one of two ways, '1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.' Phelan v. City of Chi., 347 F.3d 679, 681 (7th Cir. 2003) (citing Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir. 1986); see also Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010).

Notably, the absence of explicit contractual provisions "may not always foreclose the possibility that a [public employee] has a 'property' interest in [continued employment]." Perry v. Sindermann, 408 U.S. 593, 601 (1972). "Absent an express agreement, an at will employee may still prove a property interest in his or her employment under the second test if there is a 'clearly implied promise in their continued employment.'" Phelan, 347 F.3d at 682 (citing Shlay, 802 F.2d at 921)). To demonstrate that there is a property interest, an at will employee plaintiff must show more than a "unilateral expectation" or an "abstract need or desire" for the employment; he must have some "legitimate claim of

Page **11** of **18**

entitlement" to it. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Perry, 408 U.S. at 601 ("mutually explicit understandings that support [a] claim of entitlement" may give rise to a property interest in employment).

"In the absence of any controlling state statute, extrinsic evidence of a policy or practice upon which a legitimate expectation of the continuation of a benefit can be based may provide a basis for the property right." Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1263 (7th Cir. 1985) (citing Danno v. Peterson, 421 F.Supp. 950 (N.D.Ill.1976)). "Traditionally, Illinois has treated announced and even written personnel policies as a gratuity that can leave the employer free to change or discontinue the policy at any time." Id. "If an employer's stated policies do not prove to have contractual status, an Illinois employee may still recover under the theory of promissory estoppel." Id. at 1264.

Plaintiff alleges that his property interest arises under a theory of promissory estoppel as seen in Patkus. d/e 25 at 5. In Patkus, the Seventh Circuit found that, despite the fired employee's lack of a written employment contract, a protectible property interest in continued employment was created by the employer's promise to

the Department of Labor "to implement a dismissal only for cause personnel policy" by way of a written policy manual. 769 F.2d at 1264. Under those "very particular circumstances," that promise created a legitimate expectation of continued expectation of continued employment, even though the employer had not yet formally adopted the promised policy. Id. In sum, the property interest found in Patkus was based on written guidelines communicated by governmental officials, and the mutually explicit understanding stemmed from an institutionally endorsed policy.

Under Illinois law, a claim for promissory estoppel requires the plaintiff to prove that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to his detriment." Quake Constr., Inc. v. American Airlines, Inc., 141 Ill.2d 281, 310 (1990). The Court addresses each of the four prongs in turn.

### A. Defendants Made an Unambiguous Promise to Plaintiff

Plaintiff alleges that his property interest in his continued employment stems from "a clearly implied promise of continued employment" via the assurances given by Defendant Eilers. d/e 25,

p. 5. Plaintiff claims that Eilers repeatedly offered Plaintiff the permanent position of assistant warden of operations at Pontiac between March 2018 and August 2019, but that each time Plaintiff declined the offer and expressed to Defendant Eilers that, if he accepted the offered position, it would not be covered by the collective bargaining agreement, and he would lose that job protection. d/e 23 at ¶ 10.

When Defendant Eilers offered Plaintiff the permanent position of assistant warden of operations at Western in 2020, id. at ¶ 25, however, Plaintiff expressed his concern about job security, id. at 27—"that in the past wardens and assistant wardens had been terminated from their jobs for arbitrary reasons unrelated to their conduct or performance without the ability he had as a shift supervisor to challenge that action." Id. at ¶ 24. In response to Plaintiff's expressed concerns, Defendant Eilers informed Plaintiff that he need not worry because IDOC no longer engaged in the arbitrary practices that concerned Plaintiff. Id. at ¶ 28. . Plaintiff argues Defendant Eilers' statements as alleged constitute an unambiguous promise to Plaintiff—that the IDOC would not terminate Plaintiff from his job for arbitrary reasons unrelated to

his conduct or performance without the ability he had as a shift supervisor to challenge such an action under the first prong of the promissory estoppel test. d/e 25, p. 5.

### B. Plaintiff Relied on Defendant's Promise

Plaintiff alleges that he would not have accepted the assistant warden position without Defendant Eilers' statements regarding job security in that position. d/e 23 at ¶ 29. Plaintiff accepted the assistant warden position. Id. Therefore, Plaintiff as alleged relied on Defendant Eilers' statements regarding job security in that position under the second prong of the promissory estoppel test. d/e 25, p. 6.

### C. Plaintiff's Reliance was Expected and Foreseeable by Defendants

Plaintiff alleges that he expressed his concern about job security "during his discussions with Eilers," d/e 23 at ¶ 27, and that Defendant Eilers made his statements about Plaintiff's concern about job security "in response" to Plaintiff expressing that concern. Id. at ¶ 28. These "discussions" occurred during the "five days" between when Defendant Eilers offered Plaintiff the job and when Defendant Eilers expected Plaintiff to start the job. Id. at ¶ 29.

Based on the timing and nature of the discussions as alleged, Plaintiff's reliance on Defendant Eilers' statements was expected and foreseeable by Defendant Eilers under the third prong of the promissory estoppel test. d/e 25, p. 6.

**D. Plaintiff Did Not Rely on Defendant's Promise to His Detriment**

Plaintiff alleges that he shared his job security concern with Defendant Eilers, d/e 23 at ¶ 27, "that in the past wardens and assistant wardens had been terminated from their jobs for arbitrary reasons unrelated to their conduct or performance without the ability he had as a shift supervisor to challenge that action." Id. at ¶ 24. In response to Plaintiff's expressed concerns, Defendant Eilers informed Plaintiff that he need not worry because IDOC no longer engaged in the arbitrary practices that concerned Plaintiff, id. at ¶ 28. Plaintiff alleges this constitutes a promise. d/e 25, p. 5.

However, there was no detrimental reliance because Plaintiff's firing was "because of his involvement in the [October 26, 2018,] incident" while temporarily assigned the duties of the assistant warden at Pontiac. Id. at ¶ 30. Therefore, even if Plaintiff relied on Defendant Eilers' promise that Plaintiff would not be terminated for

an arbitrary reason unrelated to his conduct or performance, his firing *was* related to his conduct or performance during the October 26, 2018, incident. Further, the status of the other three supervisors implicated in the OEIG report as Plaintiff references has no effect on whether Plaintiff's promissory estoppel claim includes the necessary elements.

In sum, Plaintiff's claim to a property interest in his employment under a promissory estoppel theory lacks the fourth element required under Illinois law. See Quake Constr., Inc. v. American Airlines, Inc., 141 Ill.2d 281, 310 (1990). Plaintiff only raises the incomplete promissory estoppel claim to establish his property interest in his employment, and a procedural due process claim must set forth a valid property interest. See Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010) (quoting Hudson v. City of Chi., 374 F.3d 554, 559 (7th Cir. 2004)). Counts I, II and III of Plaintiff's Second Amended Complaint are all procedural due process claims and thus cannot proceed.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (d/e 24) is GRANTED.

Counts I, II, and III are DISMISSED WITHOUT PREJUDICE for failure to plausibly state a claim for relief upon which relief can be granted. Plaintiff is granted leave to file a Third Amended Complaint as to Counts I, II, and III. Any Amended Complaint shall be filed within 30 days of the entry of this Order.

**ENTERED: November 1, 2024.**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**