## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **GLENDAL FRENCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-cv-3045** |
| | ) | |
| **ROB JEFFREYS, CAMILE** | ) | |
| **LINDSAY, and JOHN EILERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants Rob Jeffreys,
Camile Lindsay, and John Eilers' ("Defendants") Motion to Dismiss
(d/e 28).  Plaintiff Glendal French ("Plaintiff") does not state a claim
upon which relief can be granted, so the Motion (d/e 28) is
GRANTED.

## I.    BACKGROUND

On November 27, 2024, Plaintiff filed a three-Count Third
Amended Complaint (d/e 27) against Defendant Jeffreys, in his
capacity as Acting Director of the Illinois Department of Corrections
("IDOC"), Defendant Lindsay, in her capacity as Chief of Staff of
IDOC, and Defendant Eilers, in his capacity as Director of

Operations of IDOC.  Id. at ¶¶ 3-5.

On December 11, 2024, Defendants moved to dismiss all Counts for failure to plausibly state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (d/e 28).  On January 20, 2025, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (d/e 30).

## II.   LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's Third Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. d/e 28, p. 3. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the complaint's sufficiency. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" that puts the defendant on notice of the allegations.  Fed. R. Civ. P. 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).  The Court accepts all well-pleaded facts alleged and draws all possible inferences in the plaintiff's favor.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to demonstrate a claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plausible claim is one from which the court can draw reasonable inferences that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability. Twombly, 550 U.S. at 556. A complaint merely reciting a cause of action or conclusory legal statements without support is insufficient. Iqbal, 556 U.S. at 678.

### III.   FACTS

The following facts are taken from Plaintiff's Third Amended Complaint (d/e 27) and are accepted as true at the motion to dismiss stage. Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

In 1995, Plaintiff joined IDOC as a correctional officer and progressively rose through the ranks. See d/e 27, ¶ 6. In 2018, Plaintiff was a shift supervisor at the Pontiac Correctional Center ("Pontiac"). Id. at ¶ 7. Plaintiff was a member of the VR704 bargaining unit, represented for collective bargaining purposes by a

labor organization affiliated with the Laborers' Union of North America. Id. When Plaintiff held the position of shift supervisor, a collective bargaining agreement covered the terms of his employment and held that discipline could be imposed on a covered employee only for just cause. Id. at ¶ 8.

As a shift supervisor, Plaintiff was a merit compensation employee protected by the Personnel Code, 20 ILCS 415/1 et seq. Id. at ¶ 19. Because Plaintiff was a merit compensation employee in the VR704 bargaining unit, the collective bargaining agreement between the State of Illinois and the Laborers' Union of North America governed Plaintiff's employment. Id.

Between March 2018 and August 2019, while a shift supervisor, Plaintiff was temporarily assigned the duties of the assistant warden of operations at Pontiac. Id. at ¶ 9. The collective bargaining agreement still covered him during that time. Id.

While Plaintiff temporarily served as the assistant warden at Pontiac, Defendant Eilers on several occasions offered Plaintiff the permanent position of assistant warden of operations at Pontiac. Id. at ¶ 10. As the Director of Operations at IDOC, Defendant Eilers had the authority to discipline and initiate termination actions for

employees under his chain of command. Id. at ¶ 5. Plaintiff declined

the offer each time and expressed to Defendant Eilers that, if he

accepted the offered position, his employment would not be covered

by the collective bargaining agreement, and he would lose the

accompanying job protection. Id. at ¶ 10.

On October 26, 2018, a correctional officer, who several

employees thought was gay, issued a ticket to an inmate for sexual

misconduct. Id. at ¶ 11. One of the ticketing correctional officer's

supervisors required the ticketing correctional officer to draw a

picture of the incident on a fictitious IDOC form as a form of

harassment against the ticketing correctional officer. Id. The

ticketing correctional officer's supervisor and other staff members

then shared the form with a large group of employees. Id. (the

events of id. at ¶ 11 "the October 26, 2018, incident"). Three shift

supervisors participated in receiving and distributing the form. Id.

at ¶ 12.

Plaintiff was sent a copy of the fictitious form and determined

that the form and its apparent distribution were inappropriate. Id.

at ¶ 13. Plaintiff forwarded the form to Lieutenant Whitecotton, an

acting internal affairs officer whose first name is not provided, so

that Lieutenant Whitecotton would take appropriate steps to address the drawing's preparation and distribution. Id. Shortly after Plaintiff sent Lieutenant Whitecotton the drawing, Lieutenant Whitecotton informed Plaintiff that only the Warden could order an investigation. Id. at ¶ 14.

Following Plaintiff's conversation with Lieutenant Whitecotton, Plaintiff informed Warden Kennedy, whose first name is not provided, about the drawing. Id. at ¶ 15. Warden Kennedy informed Plaintiff that she was aware of the drawing. Id. Plaintiff thus assumed that IDOC would take appropriate measures looking into the fictitious form with the drawing and its distribution. Id.

Plaintiff had no further involvement with the drawing and had no contact with the ticketing correctional officer who prepared it. Id. at ¶ 16. None of the three shift supervisors referenced earlier, notwithstanding their supervisory responsibilities, took any steps either to report or take action to stop the prank relating to the drawing and its distribution. Id. at ¶ 17.

In June 2019, the Office of Executive Inspector General began an investigation into the October 26, 2018, incident. Id. at ¶ 22. Upon completing the investigation, Office of Executive Inspector

General issued a report on it. Id. at ¶ 23. Plaintiff alleges that the report "identified no facts that [his] involvement in the incident was other than as described" earlier and "identified misconduct relating to the incident by three security supervisors each of whom had significantly more involvement in that incident than did [Plaintiff] and, unlike [Plaintiff], took no steps to address the incident." Id.

After the Office of Executive Inspector General investigation concluded, the three shift supervisors referenced earlier were initially terminated because of their involvement in the incident. Id. at ¶ 24. IDOC later set aside their terminations and instead assessed each a 60-day disciplinary suspension. Id.

In July 2019, Plaintiff requested that IDOC return him to his position as shift supervisor. Id. at ¶ 18. He discussed that request with Defendant Eilers and explained that he was not happy as an assistant warden. Id. Defendant Eilers, although disappointed, indicated he understood and would accommodate Plaintiff's request. Id. Plaintiff also alleges that IDOC "looked into" the October 26, 2018, incident "and was aware that [Plaintiff's] involvement [in the incident] was limited to" the description earlier. Id. at ¶ 21.

In May 2020, Defendant Eilers contacted Plaintiff, informed

Plaintiff that there were operational problems at the Western Illinois
Correctional Facility ("Western") and asked Plaintiff if he would
consider interviewing for the position of assistant warden of
operations there. Id. at ¶ 25. Defendant Eilers informed Plaintiff
that, if Plaintiff took the position, Defendant Eilers wanted Plaintiff
to move as soon as possible. Id.

Plaintiff agreed to the interview for the position. Id. at ¶ 26.
However, Plaintiff was concerned about accepting the Western
assistant warden position because: (1) he was only three years away
from retirement; (2) he enjoyed his job and job security as a shift
supervisor; and (3) he would have to move from his Lexington,
Illinois residence, which would involve sending his children to a
different school system, selling his home and purchasing a new
home. Id.

Several days after Defendant Eilers contacted Plaintiff about
interviewing, Defendants Eilers, Lindsay, and Jeffreys interviewed
Plaintiff for the Western position. Id. at ¶ 27.

Following the interview, Plaintiff was undecided as to whether
he would accept the assistant warden position if offered it. Id. at
¶ 28. Plaintiff's position as a shift supervisor provided him with

some job security. Id. Plaintiff was aware from other people's accounts and his own observations while working at Pontiac that, in the past, "wardens and assistant wardens had been terminated from their jobs for arbitrary reasons without the ability he had as shift supervisor to challenge that action." Id.

Several days after Plaintiff's interview, Defendant Eilers offered Plaintiff the Western assistant warden position and informed Plaintiff he would have to start the position in five days. Id. at ¶ 29. Plaintiff alleges that IDOC was aware that Plaintiff's involvement in the October 26, 2018, incident involving the drawing "was limited to what is described" earlier. Id. at ¶ 30.

During discussions with Defendant Eilers, Plaintiff expressed his concern about job security as an assistant warden. Id. at ¶ 31. In response to Plaintiff's expressed concern, Defendant Eilers said that Plaintiff "need not worry because [IDOC] no longer engaged in the arbitrary practices in its personnel decisions involving wardens and assistant wardens." Id. at ¶ 32.

On an unspecified date, Plaintiff accepted the assistant warden position. Id. at ¶ 33. Plaintiff would not have accepted the position without Defendant Eilers' assurances of job security in that

position. Id.

On March 5, 2021, Plaintiff was directed to a meeting in Springfield, Illinois with Defendant Eilers. Id. at ¶ 34. At the meeting, Defendant Eilers informed Plaintiff that, because of Plaintiff's involvement in the October 26, 2018, incident, Plaintiff was being terminated from his position with IDOC. Id.

On an unspecified date, Plaintiff learned that IDOC reinstated the three shift supervisors referenced earlier. Id. at ¶ 35. Plaintiff made a written request to Defendant Lindsay that IDOC set aside his termination and reinstate him as a shift supervisor like the three shift supervisors. Id. Plaintiff's request was denied. Id.

Plaintiff asserts that IDOC terminating him while retaining the three shift supervisors referenced earlier was "arbitrary." Id. at ¶ 36. In terminating Plaintiff, neither IDOC nor the individual Defendants provided Plaintiff with: (1) advance notice that disciplinary action might be taken against him and an opportunity to respond to that notice before disciplinary action was taken; and (2) an opportunity for a hearing after his termination to contest the disciplinary decision. Id. at ¶ 37.

## IV.   ANALYSIS

Plaintiff alleges in Counts I, II, and III of the Third Amended
Complaint that Defendants Jeffreys, Lindsay, and Eilers,
respectively, deprived Plaintiff of a property interest—his
employment—without due process of law under the Due Process
Clause of the Fourteenth Amendment. See d/e 27, pp. 8-11, ¶ 42.

Plaintiff argues that since the Personnel Code (20 ILCS 415/1
et seq.) and the collective bargaining agreement protected him from
termination absent good cause, he possessed a property interest in
his employment as an IDOC shift supervisor. See d/e 27, pp. 8-11,
¶ 39. Plaintiff then argues that "by virtue of" Defendant Eilers'
assurances—that IDOC "no longer engaged in the arbitrary
practices in its personnel decisions involving wardens and assistant
wardens," id. at ¶ 32—Plaintiff "continued to have a property
interest in his employment" after he became an assistant warden.
Id. at ¶ 40.

The Court notes that the Personnel Code (20 ILCS 415/1 et
seq.) and collective bargaining agreement's contents are different
and distinct from assurances that IDOC "no longer engaged in the
arbitrary practices in its personnel decisions involving wardens and

assistant wardens." d/e 27, ¶ 32. Plaintiff also states that he "was not at the time of his discharge covered by a collective bargaining agreement protecting him from discharge absent cause." d/e 30, p. 5. The Court, therefore, understands Plaintiff to allege two distinct property interests—one alleged property interest under the Code and bargaining agreement, and one alleged property interest under Defendant Eilers' alleged assurances—and not to allege one continuous property interest.

Defendants argue that, since Defendant Eilers' statement to Plaintiff did not create a mutually explicit understanding of job security, Plaintiff has no cognizable property interest in his employment as an assistant warden under a theory of promissory estoppel and, therefore, is not entitled to due process. See d/e 28, pp. 5-6. Plaintiff responds that he has alleged a property interest through the mutually explicit understanding created by Defendant Eilers' representations to him under a theory of promissory estoppel. See d/e 30, pp. 4–8.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "An

essential component of a procedural due process claim is a protected property or liberty interest." <u>Minch v. City of Chi.</u>, 486 F.3d 294, 302 (7th Cir. 2007). "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" <u>Khan v. Bland</u>, 630 F.3d 519, 527 (7th Cir. 2010) (quoting <u>Hudson v. City of Chi.</u>, 374 F.3d 554, 559 (7th Cir. 2004)).

"In the employment context, a property interest can be created in one of two ways, '1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.'" <u>Phelan v. City of Chi.</u>, 347 F.3d 679, 681 (7th Cir. 2003) (citing <u>Shlay v. Montgomery</u>, 802 F.2d 918, 921 (7th Cir. 1986); <u>see</u> <u>also</u> <u>Palka v. Shelton</u>, 623 F.3d 447, 452 (7th Cir. 2010).

Notably, the absence of explicit contractual provisions "may not always foreclose the possibility that a [public employee] has a 'property' interest in [continued employment]." <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972). "Absent an express agreement, an at will employee may still prove a property interest in

his or her employment under the second test if there is a 'clearly implied promise in their continued employment.'" <u>Phelan</u>, 347 F.3d at 682 (quoting <u>Shlay</u>, 802 F.2d at 921)). To demonstrate that there is a property interest, an at will employee plaintiff must show some "legitimate claim of entitlement" to the employment. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972); <u>see also</u> <u>Perry</u>, 408 U.S. at 601 ("mutually explicit understandings that support [a] claim of entitlement" may give rise to a property interest in employment).

"In the absence of any controlling state statute, extrinsic evidence of a policy or practice upon which a legitimate expectation of the continuation of a benefit can be based may provide a basis for the property right." <u>Patkus v. Sangamon-Cass Consortium</u>, 769 F.2d 1251, 1263 (7th Cir. 1985). "Traditionally, Illinois has treated announced and even written personnel policies as a gratuity that can leave the employer free to change or discontinue the policy at any time." <u>Id.</u> "If an employer's stated policies do not prove to have contractual status, an Illinois employee may still recover under the theory of promissory estoppel." <u>Id.</u> at 1264.

Under Illinois law, a claim for promissory estoppel requires the plaintiff to prove that "(1) defendants made an unambiguous

promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to his detriment." <u>Quake Constr., Inc. v. American Airlines, Inc.</u>, 141 Ill.2d 281, 310 (1990). The Court addresses each of these four prongs in turn.

### A. Defendants Made an Unambiguous Promise to Plaintiff

Plaintiff alleges Defendant Eilers' statements—that IDOC "no longer engaged in the arbitrary practices in its personnel decisions involving wardens and assistant wardens"—constitute an unambiguous promise to Plaintiff under the first prong of the promissory estoppel test. <u>See</u> d/e 27, ¶ 32; d/e 30, p. 6.

### B. Plaintiff Relied on Defendant's Promise

Plaintiff alleges that he would not have accepted the assistant warden position without Defendant Eilers' statements regarding job security in that position. <u>See</u> d/e 27, ¶ 33. Plaintiff accepted the assistant warden position. <u>Id.</u> Thus, Plaintiff alleges he relied on Defendant Eilers' statements regarding job security in that position under the second prong of the promissory estoppel test. <u>See</u> <u>id.</u>; d/e 30, p. 6.

**C. Plaintiff's Reliance was Expected and Foreseeable by Defendants**

Plaintiff expressed his job security concern "during his discussions" with Defendant Eilers. d/e 27 at ¶ 31. Defendant Eilers made his statements about Plaintiff's concern about job security "in response" to Plaintiff expressing his concern. Id. at ¶ 32. These discussions occurred during the five days between when Defendant Eilers offered Plaintiff the Western assistant warden position and when Defendant Eilers expected Plaintiff to start the position. Id. at ¶ 29. Based on the timing and nature of those discussions, Plaintiff alleges that his reliance on Defendant Eilers' statements was expected and foreseeable by Defendants under the third prong of the promissory estoppel test. See id. at ¶¶ 29-32; d/e 30, p. 6.

**D. Plaintiff Did Not Rely on Defendant's Promise to His Detriment**

While Plaintiff alleges Defendant Eilers' statements constitute an unambiguous promise to Plaintiff, see d/e 27, ¶ 32; d/e 30, p. 6, Plaintiff did not rely on that promise—that IDOC "no longer engaged in the arbitrary practices in its personnel decisions involving

wardens and assistant wardens," d/e 27, ¶ 32—to his detriment
since Plaintiff's firing was "because of his involvement" in the
October 26, 2018, incident while temporarily assigned the duties of
the assistant warden at Pontiac. d/e 27, ¶ 34.

Plaintiff presents three facts to show that he nonetheless relied
on Defendant Eilers' assurances to his detriment. See d/e 30, pp.
6-7. But these facts taken together do not indicate that Plaintiff
relied on Defendant Eilers' promise and was harmed as a result.

First, Plaintiff asserts in his reply that his conduct regarding
the October 26, 2018, incident was not in furtherance of the
incident, that he found the incident inappropriate, and that "he was
doing his job" when "he sent the drawing to Pontiac's acting
internal affairs officer, assuming that appropriate steps would be
undertaken to look into the incident" and when "he reported his
concerns to" Warden Kennedy. Id. at p. 6.

In the Third Amended Complaint, Plaintiff claims that he
"determined that the form and its apparent distribution were
inappropriate. Accordingly, he forwarded it to Lieutenant
Whitecotton in his capacity as an acting internal affairs officer. It
was his intent that [Lieutenant] Whitecotton, upon receiving the

form, would take appropriate steps to address the preparation and distribution of the drawing." d/e 27, ¶ 13. In short, Plaintiff claims that he had a valid reason for his conduct regarding the October 26, 2018, incident.

However, Plaintiff does not state that he told Lieutenant Whitecotton that he found the form inappropriate or that he directed Lieutenant Whitecotton to take appropriate steps to address the October 26, 2018, incident. Neither does Plaintiff claim that he conveyed as much to Defendant Eilers during his termination meeting on March 5, 2021, nor in his subsequent request to Defendant Lindsay that he be reinstated. Plaintiff pleads facts indicating only that he sent the drawing from the October 26, 2018, incident to Lieutenant Whitecotton and Warden Kennedy and was then fired—and told that he was fired—for that involvement. See d/e 27, ¶¶13-15, 34. Therefore, Plaintiff does not show that he relied on a promise not to fire him arbitrarily and was then fired arbitrarily.

Second, Plaintiff asserts that Defendant Eilers made his assurances "[t]o encourage [Plaintiff] to accept the position." Id. at p. 7. This fact shows that Plaintiff relied on Defendant Eilers'

promise, as this Court held earlier and in its prior Opinion. But the fact that Plaintiff relied on a promise that he would not be fired for one reason is irrelevant to his firing for another reason altogether. Therefore, the fact that Defendant Eilers made his assurances "[t]o encourage [Plaintiff] to accept the position," id. at p. 7, does not indicate that such reliance by Plaintiff was to his detriment as required by the fourth prong of the promissory estoppel test.

Third, Plaintiff asserts that he learned of the three supervisors' reinstatement, made a written request for reinstatement, and had that request denied. Id. Plaintiff claims that IDOC's refusal to reinstate him, when it had reinstated the three shift supervisors, was arbitrary. Id. But the firing and reinstatement of the three shift supervisors have no bearing on whether Plaintiff's firing was arbitrary. As explained earlier, Plaintiff pleads facts indicating only that he sent the drawing from the October 26, 2018, incident to Lieutenant Whitecotton and Warden Kennedy and was then fired—and told that he was fired—for that involvement over two years later. See d/e 27, ¶¶13-15, 34. Therefore, Plaintiff does not show that he relied on a promise not to fire him arbitrarily and was then

fired arbitrarily.

In sum, Plaintiff's claim to a property interest in his employment under a promissory estoppel theory lacks the fourth element required under Illinois law. Plaintiff was not fired for an "arbitrary" reason as he alleges Defendant Eilers promised would not occur, see d/e 27, ¶ 32, but "because of his involvement" in the October 26, 2018, incident. Id. at ¶ 34; see also Quake Constr., Inc. v. American Airlines, Inc., 141 Ill.2d 281, 310 (1990). Plaintiff's incomplete promissory estoppel claim lacks an established property interest in his employment, and a procedural due process claim must set forth a valid property interest. See Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010). Counts I, II and III of Plaintiff's Third Amended Complaint, all procedural due process claims, thus cannot proceed.

## V. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (d/e 28) is GRANTED. Counts I, II, and III of Plaintiff's Third Amended Complaint are DISMISSED WITHOUT PREJUDICE for failure to plausibly state a claim upon which relief can be granted. Plaintiff is granted leave to file a Fourth

Amended Complaint as to Counts I, II, and III. Any Amended

Complaint shall be filed within 30 days of the entry of this Order.


**ENTERED:  April 14, 2025.**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**